IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| CATHY A. FOLKERS,<br><br>Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security,[1]<br><br>Defendant. | No. C12-0050<br><br>RULING ON JUDICIAL REVIEW |

TABLE OF CONTENTS

I.   INTRODUCTION .................................... 2

II.  PROCEDURAL BACKGROUND ............................ 2

III. PRINCIPLES OF REVIEW ............................. 3

IV.  FACTS ............................................ 5
     A.   Employment Background ....................... 5
     B.   Administrative Hearing Testimony ............ 5
          1.   Folkers' Testimony ..................... 5
          2.   Vocational Expert's Testimony .......... 6
     C.   Folkers' Medical History .................... 8

V.   CONCLUSIONS OF LAW .............................. 10
     A.   ALJ's Disability Determination ............. 10
     B.   Objections Raised by Claimant .............. 13

VI.  CONCLUSION ...................................... 16

VII. ORDER ........................................... 17

---

[1] Plaintiff originally filed this case against Michael J. Astrue, the Commissioner of Social Security Administration ("SSA"). On February 14, 2013, Carolyn W. Colvin became Commissioner of the SSA. The Court, therefore, substitutes Commissioner Colvin as the Defendant in this action. FED. R. CIV. P. 25(d)(1).

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Cathy A. Folkers on May 21, 2012, requesting judicial review of the Social Security Commissioner's decision to deny her applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits. Folkers asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits and SSI benefits. In the alternative, Folkers requests the Court to remand this matter for further proceedings.

## II. PROCEDURAL BACKGROUND

On October 10, 2010, Folkers applied for both disability insurance benefits and SSI benefits. In her applications, Folkers alleged an inability to work since February 1, 2010 due to major depression, arthritis in the hips, back problems, disc degeneration, bowel problems, temporomandibular joint disorder ("TMJ"), and underactive thyroid. Folkers' applications were denied on February 14, 2011. On April 22, 2011, her applications were denied on reconsideration. On May 27, 2011, Folkers requested an administrative hearing before an Administrative Law Judge ("ALJ"). On January 17, 2012, Folkers appeared via video conference with her attorney before ALJ Jo Ann L. Draper for an administrative hearing. Folkers and vocational expert Julie A. Svec testified at the hearing. In a decision dated February 8, 2012 the ALJ denied Folkers' claims. The ALJ determined that Folkers was not disabled and not entitled to disability insurance benefits or SSI benefits because she was functionally capable of performing work that exists in significant numbers in the national economy. Folkers appealed the ALJ's decision. On April 9, 2012, the Appeals Council denied Folkers' request for review. Consequently, the ALJ's February 8, 2012 decision was adopted as the Commissioner's final decision.

On May 21, 2012, Folkers filed this action for judicial review. The Commissioner filed an Answer on August 15, 2012. On September 17, 2012, Folkers filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that

she is not disabled and that she is functionally capable of performing work that exists in significant numbers in the national economy. On November 9, 2012, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On November 21, 2012, Folkers filed a reply brief. On June 19, 2012, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

### III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). Title 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" *Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*, 674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not

only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV. FACTS

### A. Employment Background

Folkers was born in 1964. The record contains a detailed earnings report for Folkers. The report covers the time period of 1979 to 2012. Between 1979 and 1983, Folkers had minimal earnings (less than $2,000). From 1984 to 2005, Folkers earned between $707.97 (1992) and $24,929.18 (2004). Folkers had no earnings in 2006 and 2007. She earned $10,107.50 in 2008, and $2,170.00 in 2009. She has no earnings since 2010.

### B. Administrative Hearing Testimony

#### 1. Folkers' Testimony

At the administrative hearing, Folkers' attorney inquired why Folkers believed she was unable to work starting in February 2010:

> Q: Okay. All right. Okay. So you indicated that you couldn't work after your onset date in February, 2010, because of a heart condition. What is the heart condition?
>
> A: My heart gets to where it will come to a stop and then start back up again. And I get breathing problems and I get dizzy with that.
>
> Q: And are you seeing cardiologist or who's providing the care for that?
>
> A: The hospital.
>
> Q: So you just go to the emergency room?
>
> A: Yes. . . .
>
> Q: Okay. And so what are -- what treatment do you have done?
>
> A: They haven't been giving me any treatment for that.
>
> Q: You don't see anybody -- I mean there's no medicine or no --
>
> A: I haven't --
>
> Q: -- procedures?
>
> A: -- been to a doctor yet on that due to financial issues.

(Administrative Record at 38-39.) Folkers also testified that she was limited physically in the ability to walk and go up and down stairs. Specifically, she stated that "I get out of

5

breath real easy. I get a burning sensation through my legs and my hips."[2] She indicated that she has arthritis in her hips and knees, and may eventually need to have hip and/or knee replacement surgery in the future.

Next, Folkers' attorney asked Folkers to discuss her mental health difficulties. Folkers testified that she has difficulty concentrating and remembering things. She also stated that she is often teary-eyed for no particular reason, and generally keeps to herself. Folkers' attorney asked Folkers to describe her daily moods:

> Q: Okay. And how would you describe your moods from day to day?
> A: Down. I'm just down all the time.
> Q: Are you ever happy about anything?
> A: Not too often.
> Q: I mean what kinds of things give you pleasure? Are there any things that give you any kind of good feelings?
> A: Not -- I mean nothing in particular that I -- I don't know.
> Q: Do you have any hobbies or anything that gives you any kind of enjoyment?
> A: I used to do crafts. I used to do them all the time. I can't even get interested in them anymore.
> Q: Okay. So you just don't have any interest in anything?
> A: No.

(Administrative Record at 43-44.)

### 2. Vocational Expert's Testimony

At the hearing, the ALJ provided vocational expert Julie A. Svec with a hypothetical for an individual who is:

> limited exertionally to light work activity lifting and carrying up to 20 pounds occasionally, 10 pounds frequently. Standing and walking approximately six hours a day, sitting six hours a day. This individual could only occasionally climb, balance,

---

[2] Administrative Record at 39.

> stoop, kneel, crouch, crawl, but could never climb ladders, ropes or scaffolds.
>
> This individual would be precluded from performing highly detailed, highly complex job tasks and there should be no work at production rate pace defined as a faster than normal or a fast pace on an assembly line or production line.

(Administrative Record at 51.) The vocational expert testified that under such limitations, Folkers could perform her past work as a customer service representative and waitress. The ALJ asked the vocational expert a second hypothetical question that was identical to the first hypothetical question, except it included an additional limitation that the individual "was limited to . . . tasks that could be learned in 30 days or less involving no more than simple work related decisions with few work place changes."[3] The vocational expert testified that under such limitations, Folkers could not perform her past relevant work, but could perform the following work: (1) folder (900 positions in Iowa and 50,000 positions in the nation), and (2) ticket taker (600 positions in Iowa and 35,000 positions in Iowa). The ALJ provided the vocational expert with a third hypothetical, identical to the first and second hypotheticals, except that the individual would also need two to three 15-minute unscheduled breaks per day and miss four or more days of work each month. The vocational expert stated that under such limitations, Folkers would be precluded from competitive employment.

Folkers' attorney also questioned the vocational expert:

> Q: . . . [I]f the hypothetical person had to work at a slow pace up to one-third of the work day would they be competitively employable?
> A: No.
> Q: And if the hypothetical person could only maintain attention for less than two hour segments would there be any jobs compatible with that kind of limitation?
> A: No.

---

[3] Administrative Record at 51-52.

7

(Administrative Record at 53-54.)

## C. Folkers' Medical History

On December 29, 2010, Dr. Aaron Quinn, Ph.D., reviewed Folkers' medical records and provided Disability Determination Services ("DDS") with a Psychiatric Review Technique and mental residual functional capacity ("RFC") assessment for Folkers. On the Psychiatric Review Technique assessment, Dr. Quinn diagnosed Folkers with major depressive disorder. Dr. Quinn determined that Folkers had the following limitations: mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Quinn determined that Folkers was moderately limited in her ability to: understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Dr. Quinn concluded that:

> [Folkers] is able to complete simple, repetitive tasks on a sustained basis and this conclusion is supported by [Folkers'] moderate range GAF; her intact mental status (other than depression); and her ability to complete multiple [activities of daily living] tasks. The overall evidence show[s] that [Folkers] has dealt with depression historically and that she has periodic cognitive difficulties secondary to her mood. [Folkers] is able to get along adequately with treating sources, which is evidence of her ability to interact superficially. Based on the evidence, [Folkers] is expected to have periodic difficulties with extended attention concentration, detailed instructions, and pace/persistence.

(Administrative Record at 291.)

On January 20, 2011, at the request of DDS, Folkers met with Dr. George T. Kappos, M.D., for a consultative examination. In discussing her medical history, Folkers reported to Dr. Kappos that she suffers from back pain. She rated her pain between 0 and

8

8 on a ten point scale with 10 being the most painful. She stated that her back pain on average was 3-4 out of 10. She also stated that her pain "increased by sitting, walking and stairs and improved with using a whirlpool."[4] Folkers also informed Dr. Kappos that she had a history of arthritis. Similar to her back pain, Folkers rated her arthritis pain between 3 and 10, with an average pain level of 4-5. Again, she stated that her pain increased with walking and climbing stairs. Lastly, Folkers reported that she was diagnosed with depression in 1992. Dr. Kappos noted that:

> [Folkers] as been treated with medications, which she says helps sometimes. Currently she is being followed by Dr. Safdar. She reports symptoms of constant sleeping, insomnia, no interests, suicidal [ideation] and fatigue. She has been hospitalized for depression three to four times since 1992.

(Administrative Record at 308.) Upon examination, Dr. Kappos determined that Folkers could: (1) occasionally lift and carry 25 pounds; (2) rarely sit because of "frank diarrhea requiring frequent trips to the bathroom"; and (3) rarely bend due to back pain. Dr. Kappos also opined that Folkers should avoid production line work due to her inability to maintain work pace.

On March 30, 2011, at the request of Folkers' attorney, Dr. Ali Safdar, Folkers' treating psychiatrist, filled out a Mental Impairment Questionnaire for Folkers. Dr. Safdar diagnosed Folkers with major depression. Dr. Safdar found Folkers' response to treatment to be minimal. Dr. Safdar opined that Folkers' prognosis was "fair to poor." Dr. Safdar identified the following symptoms for Folkers: loss of interest in most activities, decreased energy, thoughts of suicide, feelings of guilt or worthlessness, generalized anxiety, mood disturbance, difficulty thinking and concentrating, persistent disturbances of mood or affect, paranoid thinking, emotional withdrawal or isolation, and sleep disturbance. Dr. Safdar opined that Folkers is seriously limited, but not precluded from

---

[4] Administrative Record at 307.

the ability to: maintain attention for a two-hour segment, maintain regular attendance and be punctual within customary, usually strict tolerances, make simple work-related decisions, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, respond appropriately to changes in a routine work setting, understand and remember detailed instructions, carry out detailed instructions, set realistic goals or make plans independently of others, maintain socially appropriate behavior, adhere to basic standards of neatness and cleanliness, and travel in unfamiliar places. Dr. Safdar also opined that Folkers is unable to meet competitive standards in the ability to: sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being unduly distracted, compete a normal workday or workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, deal with normal work stress, and deal with stress of semi-skilled and skilled work. Dr. Safdar determined that Folkers had the following limitations: marked restriction of activities of daily living, moderate difficulties in maintaining social functioning, and marked difficulties in maintaining concentration, persistence, or pace. Lastly, Dr. Safdar opined that Folkers would miss more than four days per month from work due to her impairments or treatment for her impairments.

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Folkers is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings,

10

> (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. § 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "bears the burden of demonstrating an inability to return to [his] or her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "given [the claimant's] RFC [(residual functional capacity)], age, education, and work experience, there [are] a significant number of other jobs in the national economy that [the claimant] could

perform." *Brock*, 674 F.3d at 1064 (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 416.945. The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Boettcher v. Astrue*, 652 F.3d 860, 867 (8th Cir. 2011) (quoting *Moore*, 572 F.3d at 523); 20 C.F.R. § 416.945.

The ALJ applied the first step of the analysis and determined that Folkers had not engaged in substantial gainful activity since February 1, 2010. At the second step, the ALJ concluded from the medical evidence that Folkers had the following severe impairments: degenerative disc disease of the cervical spine, osteoarthritis of the right knee and hips, and depression. At the third step, the ALJ found that Folkers did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Folkers' RFC as follows:

> [Folkers] has the residual functional capacity to perform light work . . . involving lifting and carrying 20 pounds occasionally and 10 pounds frequently; standing and walking 6 hours in an 8 hour work day; sitting 6 hours in an 8 hour workday; occasionally climbing, balancing, stooping, kneeling, crouching, and crawling; and never climbing ladders, ropes, or scaffolds. The individual would be limited to tasks that could be learned in less than 30 days involving no more than simple work-related decisions with few work place changes and there should be no work at production rate pace, defined as faster than normal or fast pace on an assembly or production line.

(Administrative Record at 18.) Also at the fourth step, the ALJ determined that Folkers could not perform her past relevant work. At the fifth step, the ALJ determined that based on her age, education, previous work experience, and RFC, Folkers could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Folkers was not disabled.

## B. Objections Raised by Claimant

Folkers argues that the ALJ failed to properly evaluate the opinions of her treating psychiatrist, Dr. Safdar. Specifically, Folkers argues that the ALJ improperly weighed Dr. Safdar's opinions, and failed to give good reasons for discounting Dr. Safdar's opinions. Additionally, Folkers argues that if the ALJ did not find Dr. Safdar's opinions sufficient for determining whether she was disabled, then the ALJ should have ordered a consultative psychological evaluation. Folkers concludes that this case should be remanded for further consideration of Dr. Safdar's opinions.

An ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence on the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). The opinion of a treating physician:

> should not ordinarily be disregarded and is entitled to substantial weight. A treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.

*Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) (citations omitted).

"Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is 'inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.' *Id.*"); *Strongson v. Barnhart*, 361 F.3d 1066, 1070

13

(8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC assessment if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ).

The regulations also require an ALJ to give "good reasons" for giving weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). The regulations also require an ALJ to give "good reasons" for rejecting statements provided by a treating physician. *Id.*; *see also Tilley v. Astrue*, 580 F.3d 675, 680 (8th Cir. 2009) ("The regulations require the ALJ to 'always give good reasons' for the weight afforded to the treating source's opinion.") (citation omitted).

Additionally, an ALJ may order medical examinations and tests when the medical records presented to him or her constitute insufficient medical evidence to determine whether the claimant is disabled. *Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994) (citation omitted); *see also* 20 C.F.R. § 404.1519a(a)(1) ("The decision to purchase a consultative examination . . . will be made after we have given full consideration to whether the additional information needed is readily available from the records of your medical sources."). 20 C.F.R. § 404.1519a(b) provides that "[a] consultative examination may be purchased when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on . . . [the] claim." *Id.* For example, a consultative examination should be purchased when "[t]he additional evidence needed is not contained in the records of your medical sources." 20 C.F.R. § 404.1519a(b)(1).

In her decision, the ALJ addressed the opinions of Dr. Safdar:

> The record reveals a history of intermittent treatment for depression with a hospitalization secondary to an overdose in September 2010. [Folkers] had been treated by a psychiatrist and free medical clinic, although she had not been consistent with taking medications. For example, [Folkers] met with her treating psychiatrist in October 2009 at which time global assessment of functioning (GAF) was rated in the moderate range. Yet, [Folkers] did not present again until May 2010 at

14

> which time she reported not having taken medication in months. When seen by the psychiatrist in November 2010, [Folkers] was noted to be doing fairly well following hospitalization. Mental status examination revealed no evidence of suicidal ideation. While follow-up was recommended in one month, [Folkers] did not return to the clinic until February 2011 when mental status examination once again revealed no evidence of suicidal ideation. Subsequent progress notes indicated [Folkers] was maintained on a medication regimen consisting of Zoloft and Wellbutrin. . . .
>
> The undersigned considered the opinion of Dr. Safdar. While limited weight is given to the opinion given that a portion of the opinion has been incorporated into the residual functional capacity conclusion, the undersigned emphasizes that the opinion is not consistent with objective findings as shown in clinical progress notes. Furthermore, it appears the treating psychiatrist relied upon [Folkers'] subjective complaints in forming his opinion.

(Administrative Record at 20-21.) Additionally, the ALJ determined that:

> At one point or another in the record, either in forms completed in connection with the application, in medical records, or in testimony, [Folkers] reported caring for her personal needs, caring for pets, getting her son up for school and getting him home from school, preparing simple meals, washing dishes, doing laundry, shopping, and driving, activities which are not limited to the extent one would expect given the complaints of disabling symptoms and limitations. There is evidence that [Folkers] was not compliant in taking prescribed medications, suggesting symptoms may not have been as limiting as alleged. . . . The record also reflects significant gaps in [Folkers'] history of treatment. [Folkers] admitted to certain abilities which provide support for part of the residual functional capacity conclusion in this decision. For these reasons, the undersigned finds [Folkers] less than credible regarding her allegation of total disability.

(Administrative Record at 21.)

Having reviewed the entire record, the Court finds that the ALJ properly considered and weighed the opinion evidence provided by Dr. Safdar. The Court also finds that the ALJ provided "good reasons" both explicitly and implicitly for rejecting the opinions of Dr. Safdar. *See* 20 C.F.R. § 404.1527(d)(2); *Strongson*, 361 F.3d at 1070; *Edwards*, 314 F.3d at 967. Moreover, the ALJ did not completely disregard Dr. Safdar's opinions. While the ALJ gave only "limited weight" to Dr. Safdar's opinions, she did incorporate some of Dr. Safdar's opinions into her RFC assessment for Folkers.[5] The Court concludes that the ALJ properly considered Dr. Safdar's opinions and addressed inconsistencies in Dr. Safdar's opinions with the record as a whole. Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

The Court also finds that the medical evidence relied on by the ALJ was adequate for making a disability determination. No crucial issues were undeveloped and the medical evidence was based on medically acceptable clinical and laboratory diagnostic techniques. Accordingly, the Court determines that remand is unnecessary for a consultative examination. *See Barrett*, 38 F.3d at 1023 (an ALJ may order a medical examination when the medical records presented to him or her constitute insufficient medical evidence to determine whether the claimant is disabled). Furthermore, remand is also unnecessary because the Court finds that the ALJ fully and fairly developed the record as to the medical evidence in this case. *See Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007) (providing that an ALJ has a duty to develop the record fully and fairly).

## VI. CONCLUSION

The Court finds that the ALJ properly considered the medical evidence and opinions in the record. In particular, the Court determines that the ALJ properly addressed and weighed the opinions of Dr. Safdar. Lastly, the Court finds that no crucial issues were

---

[5] *See* Administrative Record at 18, 20-21.

16

undeveloped and the medical evidence was based on medically acceptable clinical and laboratory diagnostic techniques, making remand for a consultative examination unnecessary. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

### VII. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

1. The final decision of the Commissioner of Social Security is **AFFIRMED**;
2. Plaintiff's Complaint (docket number 3) is **DISMISSED** with prejudice; and
3. The Clerk of Court is directed to enter judgment accordingly.

DATED this 5th day of March, 2013.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA